UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

HAROLD W. CAGE, #244367,

        Plaintiff,

v.

SHIRLEE A. HARRY, et al.,

        Defendants.

Case No. 1:09-cv-512

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

      This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff filed this lawsuit on June 4, 2009, while he was an inmate at the Muskegon Correctional Facility (MCF). He has a history of filing frivolous and abusive lawsuits, and as a result, is generally prohibited from proceeding *in forma pauperis* under the "three strikes" provision of the Prison Litigation Reform Act (PLRA). 28 U.S.C. § 1915(g). Here, plaintiff was allowed to proceed *in forma pauperis* because he alleged that at MCF he was in imminent danger of serious physical injury. His complaint arises from the medical care he received at MCF from October 18, 2007 through August 12, 2009. He alleges that Warden Shirlee A. Harry, Health Unit Manager Michael Whalen, Correctional Medical Services, Inc. (CMS), and Prison Health Services, Inc. (PHS) were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.[1] Warden Harry and Health Unit Manager Whalen are sued in their official and individual capacities.

---

[1] On July 28, 2009, the court dismissed all plaintiff's federal claims except the Eighth Amendment claims against defendants addressed in this report and recommendation. (7/28/09 Opinion and Order, docket #s 9, 10).

Plaintiff's amended complaint does not include a coherent statement of the relief sought, but the brief he filed in support of his motion for summary judgment states that he is seeking damages and suggests that he is seeking injunctive relief. (docket # 114, Plf. Brief at 16, ID # 1679).

The matter is now before the court on cross-motions for summary judgment by plaintiff (docket # 114) and defendants (docket #s 86, 112, 157). For the reasons set forth herein, I recommend that plaintiff's clams for injunctive relief against defendants Harry and Whalen be dismissed as moot, and that his claims for damages against these defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that plaintiff's motion for summary judgment be denied and that defendants' motions for summary judgment be granted on all plaintiff's federal claims. The court, in its discretion, should decline to exercise supplemental jurisdiction over plaintiff's purported state-law claims.

**Applicable Standards**

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005). "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005)(quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555

F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

Where, however, a moving party with the burden of proof seeks summary judgment, he faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to plaintiff's motion for summary judgment and the portions of defendants' motions seeking dismissal of plaintiff's claims based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a).

B.  **Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies, and they seek dismissal of plaintiff's claims on that basis. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies before filing his complaint. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *See Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. *Id.* at 90-93; *see* 42 U.S.C. § 1997e(a); *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). The procedural bar does not apply

where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).

Policy Directive 03.02.130 [2] sets forth the procedures governing the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days after the attempted oral resolution. *Id*. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W, X. Prisoners are required to use "a Prisoner/Parolee Grievance (CSJ 247A) [form] to file a Step I grievance." *Id.* at ¶ R. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Warden is generally the Step II respondent. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to

---

[2] A copy of Policy Directive 03.02.130 is found in the record. (docket # 112-3, ID #s 1616-22).

providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing ....." *Id.*

Policy Directive 03.02.130 requires that the prisoner name within the body of his grievance the person whose conduct is challenged. In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir. 2004).

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is in the custody of the Michigan Department of Corrections (MDOC) and is incarcerated at the Chippewa Correctional Facility (URF). (docket # 180). He was an inmate at the Muskegon Correctional Facility (MCF) from October 18, 2007 through August 12, 2009. (docket # 158-6, Whalen Aff. ¶ 4; docket # 128-6,

Plf. Aff. at 32-33, ID #s 1985-86). Shirlee A Harry was MCF's warden and Michael Whalen was its health unit manager. (docket # 158-5, Harry Aff. ¶ 3, ID # 2627; Whalen Aff. ¶ 1, ID # 2629).

A. **Medical Care**

Plaintiff received an extraordinary level of medical attention during his confinement at MCF. He repeatedly claimed that he had collapsed and hit his head on something and made threats that he would injure or kill himself. Plaintiff was transported from MCF to the hospital on at least nine occasions. (docket # 11, Plf. Aff. at 16-32, ID #s 325-41). Plaintiff was twice hospitalized at the Huron Valley Medical Facility for psychological treatment: December 26, 2007 through January 2, 2008 (*Id.* at ID # 326); and April 28, 2008 through May 7, 2008.[3] (*Id.* at ID # 332). Mental health professionals occasionally found it necessary to apply restraints to limit plaintiff's capacity for self-inflicted harm. This excerpt from plaintiff's thirty-two page affidavit reflects an incident typical of plaintiff's behavior throughout this period:

> 4-16-09   DR. BRUNN ASKED, "HOW DO YOU PLAN ON GOING TO THE HOSPITAL?" RESPONSE, "LIKE I ALWAYS GO, TAKE A BUNCH OF PILLS AND SEND MYSELF TO THE HOSPITAL." A SERGEANT WAS CALLED WHO STATED, "MR. CAGE, I AM GOING TO HAVE TO GIVE YOU A DIRECT ORDER TO RETURN TO YOUR UNIT." RESPONSE, "GO AHEAD AND GIVE ME YOUR DIRECT ORDER, I WILL RETURN TO MY CELL, TAKE A BUNCH OF PILLS, GO TO THE HOSPITAL, AND THEN TO SEGREGATION, NOW GIVE YOUR DIRECT ORDER." THE SERGEANT LOOKED AT DR. BRUNN AND AFTER A BRIEF DISCUSSION, THE SERGEANT RESPONDED, "TAKE HIM TO SEGREGATION AND PLACE HIM ON SUICIDAL WATCH."

---

[3]Although 2010 is well outside the period at issue, plaintiff's June 20, 2010 affidavit documents his ongoing struggle with serious mental health issues and suicidal tendencies: "Plaintiff [] sought and received 'Psyhological Counseling' with Dr. Alison Jones [] on 1/21, 2/8, 2/19, 2/22, 3/25, 4/1, 4/2, 5/6, 5/27, 5/28, 5/25, 6/2, 6/3, [] 6/11 and 6/14/2010 for mental and emotional distress, depression and mental anxiety, and [was] placed on suicidal observation at least four (4) times this year." (docket # 154, Plf. Aff. ¶ 9, ID # 2547).

(*Id.* at ID # 337). Plaintiff's affidavit relates that he was transported from MCF on other occasions for treatment by a specialists at Lakeshore Ophthalmology and St. Mary's Hospital. (*Id.* at ID #s 328, 330, 334).

There are over 300 entries in plaintiff's medical record for the relevant time period. Plaintiff was evaluated by medical providers approximately 25 times, psychiatric staff nearly 60 times, nursing staff approximately 150 times, and administrative staff approximately 50 times during this period of less than two years. The examinations, laboratory tests, diagnostic procedures, and specialty referrals produced results indicating that plaintiff had very minor degenerative disc disease of the cervical spine at C5-6 and C6-7. The medical diagnosis for plaintiff's subjective complaints was "benign vertigo." (Whalen Aff. ¶ 8; *see* docket # 4-3, ID #s 215-19, docket # 13-2, ID #s 399-400, 408-10, 416-25, 461-64; docket # 13-3, ID #s 466-71, 497-98, 502, 510; docket # 128-3, ID # 1879; docket # 128-5, ID #s 1914, 1949).

Plaintiff had normal arm and leg function. He was not confined to a wheelchair. The wheelchair was supplied to plaintiff as a device to assist him while walking long distances, in the event that he experienced an episode of vertigo. Instead of using the wheelchair as a walker, plaintiff insisted on sitting in it. He would have preferred it if other inmates had been allowed to push him around the prison. (docket # 122, Plf. Aff. ¶ 6, ID # 1770). Medical officials discouraged allowing other prisoners to push plaintiff because it was counter-productive to his health condition. (Whalen Aff. ¶¶ 9-11, ID #s 2630-31).

### B. Grievances

Plaintiff filed three grievances regarding conditions of his confinement at MCF that he pursued through a Step III decision before filing this lawsuit.

#### 1. Grievance No. MCF-2009-01-00035-12i

On January 8, 2009, plaintiff filed Grievance No. MCF-2009-01-00035-12i (docket # 86-4 at ID # 1250). This grievance against Warden Harry states as follows:

> I sustained an injury on 12-23-08, rushed to Hackley Hospital for injuries to neck, shoulder & lower back. Sent several medical request kites which have not been answered, sent Warden Shirlee Harry a kite regarding deliberate indifference and attached another medical request form. This facility and medical care showing deliberate indifference for their failure to respond causing additional pain and suffering. I have to wear a towel around my neck for a neck support to avoid additional movement.

(*Id.*). The Step I response states that plaintiff was seen by a nurse and then sent to the local emergency room on December 23, 2009. There were no abnormal findings. Plaintiff was examined by a nurse the following day. No further treatment was required. Plaintiff had received replies to his healthcare requests, and had been examined by a medical practitioner on January 8, 2009. Plaintiff continued to receive appropriate medical treatment. (*Id.*). Plaintiff's Step II and III appeals were denied. (*Id.* at ID # 1247, 249).

#### 2. Grievance No. MCF-2009-01-00003-12i

On January 2, 2009, plaintiff filed Grievance No. MCF-2009-01-00003-12i (docket # 86-4 at ID # 1255). Plaintiff did not name any individual in this grievance. He claimed that he fell and injured himself on December 23, 2008, and blamed the purported incident on a "defective" wheelchair and the lack of a "pusher" for it:

> I have repeatedly complained about this non-handicap facility and its deliberate indifference to my serious medical needs due to the medical notice which prohibits inmates from assisting and medical refusal to detail a pusher. Medical has placed me in a "catch 22 situation." On several occasions due to extreme weather conditions and this facility's inability to provide safe passage through the unshoveled sidewalks, I have sustained injuries. I suffered a traumatic fall on 12-23-08, sustaining neck, shoulder and lower back injuries trying to push myself through the snow without assistance. I was in a defective wheelchair which I repeatedly complained about but again medical showed deliberate indifference which resulted in more injuries. Officers and medical have repeatedly told inmates that anyone who pushes me will receive a major misconduct ticket which also ha[s] caused mental and emotional pain and suffering.

(*Id.*). The Step I grievance response emphasized that plaintiff was not making the appropriate use of the wheelchair by sitting in it. It had been provided to him as a device to assist him in ambulating long distances in the event that he experienced an episode of vertigo. Plaintiff did not require the assistance of anyone to push him around the prison. (*Id.*). Plaintiff pursued unsuccessful appeals of the denial of this grievance. (docket # 86-4, ID #s 1252-54).

### 3. Grievance No. MCF-2009-01-00002-12i

On January 2, 2009, plaintiff filed Grievance No. MCF-2009-01-00002-12i (docket # 86-4 at ID # 1260) against Nurse Cooper. In this grievance, he claimed that on December 20, 2008, he had complained to "third shift officers" that he had a headache, was dizzy, and wanted to go to the hospital. He states that he was provided with medication to help him get through the rest of the night. He claimed that on the morning of December 20, 2008, Nurse Cooper refused to treat him and sent him back to his cell. He also claimed that his wheelchair needed to be replaced because it was "defective." The Step I grievance response noted that plaintiff had been provided with a new wheelchair. Nurse Cooper had not denied him treatment. "The grievant may have come over to the medication line that day, but there was no health care appointment or evaluation. The grievant may

access health care via Health Care Request or by an Urgent /Emergent appointment." (*Id.*). Plaintiff's grievance appeals were denied. (*Id.* at ID #s 1257-59).

**Discussion**

1. Mootness

Plaintiff is now an inmate at the Chippewa Correctional Facility (docket # 180). Defendants Harry and Whalen are employed by the State of Michigan at MCF. Plaintiff's claims for injunctive relief against these defendants are moot. *See Cardinal v. Metrish*, 564 F.3d 794, 798-99 (6th Cir. 2009); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

2. Eleventh Amendment Immunity

Plaintiff's claims for damages against defendants Harry and Whalen in their official capacities are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71.

3. Vicarious Liability

Plaintiff attempts to hold defendants Harry and Whalen vicariously liable for perceived deficiencies in the medical care he received at MCF from treating and examining medical professionals. Defendants Harry and Whalen cannot be held liable under section 1983 on the basis of *respondeat superior* liability. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).

Plaintiff also seeks to hold CMS and PHS vicariously liable for the acts of their employees. A private corporation cannot be held liable under section 1983 on the basis of *respondeat superior* or vicarious liability. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir.1996). Rather, the plaintiff must establish a policy or custom that caused the constitutional violation. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). Plaintiff has not presented evidence of a custom or policy sufficient to establish entitlement to relief against either corporate defendant. *See Street*, 102 F.2d at 818; *see also Broyles v. Correctional Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at * 2 (6th Cir. Jan. 23, 2009).

4. Deliberate Indifference

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances,

including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claims against these defendants.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). The mere presence of a serious medical condition is insufficient to establish the objective component.

The plaintiff must make "an 'objective' showing that the deprivation was 'sufficiently serious' or that the result of the defendant's denial was sufficiently serious." *Hudson*, 508 U.S. at 8; *see Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). A reasonable trier of fact could find that plaintiff's vertigo and mental health problems would satisfy the objective component of an Eighth Amendment claim.

The second prong under *Estelle* requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted); *see Dotson v. Phillips*, No. 09-5923, 2010 WL 2776875, at * 3 (6th Cir. July 12, 2010)("Mere negligence does not amount to deliberate indifference, as medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) ("The subjective standard is meant to prevent the constitutionalization of medical malpractice

claims. . . ."); *accord Mabry v. Antonini*, 289 F. App'x 895, 903 (6th Cir. 2008) ("'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law.'") (quoting *Westlake*, 537 F.2d 860 n.5).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against any defendant. The record shows that plaintiff received a tremendous amount of free health care, including numerous trips to the hospital and treatment by specialists. He cannot possibly show deliberate indifference on this record. His claims that defendants "should have" provided him with "different" medical care are at best, state-law malpractice claims. His disagreement with the medical treatment he received at MCF falls far short of supporting an Eighth Amendment claim. *See e.g.*, *Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006). I find that defendants are entitled to judgment in their favor as a matter of law on plaintiff's Eighth Amendment claims.

5.  Exhaustion of Administrative Remedies

Defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). I find that defendants have carried their burden on this affirmative defense. The only grievance that plaintiff filed against a defendant herein that he pursued through a Step III decision before filing his complaint was Grievance No. MCF-2009-01-00035-12i (docket # 86-4 at ID # 1250) in which he complained that after he returned from the hospital on December 23, 2009, he sent a kite to Warden Harry and she

did not answer it. Plaintiff's claim against Warden Harry is not based on her failure to respond to his kite.[4] Plaintiff did not properly exhaust his Eighth Amendment claims against defendants. Accordingly, I recommend on an alternative basis that all plaintiff's claims against defendants be dismissed without prejudice under 42 U.S.C. § 1997e(a).

      6.      Supplemental Jurisdiction

Plaintiff asks the court to exercise jurisdiction over purported state-law claims. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). There is no reason in this case to depart from the general rule.

**Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiff's clams for injunctive relief against defendants Harry and Whalen be dismissed as moot, and that plaintiff's claims for damages against these defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that plaintiff's motion for

---

[4]Assuming *arguendo* that plaintiff' had asserted a claim against the warden based on her failure to respond to his kite, it would not have been a claim of constitutional dimension. *See e.g.*, *Crump v. Prelesnik*, No. 1:10-cv-353, 2010 WL 3516087, at * 9 (W.D. Mich. Sept. 8, 2010); *Eads v. Ray*, No. 3:08-cv-287, 2010 WL 3489390, at * 3 (E.D. Tenn. Sept. 1, 2010); *Jurich v. Michigan Dep't of Corr.*, No. 10-11487, 2010 WL 3258359, at * 3 (E.D. Mich. Aug. 17, 2010); *Espy v. Spectrum Health Sys., Inc.*, No. 1:09-cv-90, 2010 WL 3341938, at * 4 (M.D. Tenn. July 12, 2010).

summary judgment (docket # 114) be denied and that defendants' motions for summary judgment (docket #s 86, 112, 157) be granted. The court, in its discretion, should decline to exercise supplemental jurisdiction.

Dated: September 30, 2010         /s/ Joseph G. Scoville
                                  United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).